**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                No. 21-CR-0570

CHARITY FELCH,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the Motion to Dismiss Count Six of the Indictment [Doc. 32]. Having carefully considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and will be denied.

**BACKGROUND**

On April 22, 2021, Charity Felch was charged by Indictment with five counts of bank fraud in violation of 18 U.S.C. § 1344(2) and 18 U.S.C. § 2, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of access device fraud in violation of 18 U.S.C. § 1029(a)(5) and 18 U.S.C. § 2. Doc. 2. Count Six charges Ms. Felch with aggravated identity theft in violation of 18 U.S.C. § 1028A. *Id.* Specifically, Count Six alleges that on or about May 4, 2018, she "did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 2018A(c) [bank fraud], knowing that the means of identification belonged to another actual person." *Id.* According to Ms. Felch and undisputed by the government, the facts underlying the aggravated identity theft charge are as follows:

> Ms. Felch, in her capacity as office manager for an electrician's company, was authorized to print checks for the company checking account. She would then

present those checks to her employer for signature and use the signed checks to pay company expenses. She was not an authorized signer on the company checking account, nor was she authorized to pay personal expenses with company funds. On approximately May 4, 2018, Ms. Felch printed a check payable to her own credit card company in the amount of $458. She signed the check in her employer's name—forged his signature—knowing she did not have authority to do so. She then used that check to make a credit card payment, knowing that she did not have authority to use company funds for that purpose, and fraudulently intending that the company's bank would honor the forged check.

Doc. 32 at 1–2.

On August 3, 2023, Ms. Felch filed the instant motion to dismiss the aggravated identity theft charge as set forth in Count Six. Doc. 32. The government filed a response in opposition, Doc. 33, and Ms. Felch's reply followed. Doc. 35.

## DISCUSSION

In support of her instant motion to dismiss Count Six, Ms. Felch argues that, after the Supreme Court's decision in *Dubin v. United States,* 599 U.S. 110 (2023), her "offense is outside the scope" of 18 U.S.C. § 1028A. Doc. 32 at 2. The government disagrees, arguing instead that "the conduct charged falls squarely within the conduct criminalized" by § 1028A. Doc. 33 at 2. For the reasons set forth herein, the Court agrees with the government that Ms. Felch's "argument mischaracterizes the facts at issue in this case and the effect of *Dubin* on the application of the aggravated identity statute." *Id*.

I.    Standard

Section 1028A(a)(1) provides that "[w]hoever, during and in relation to" certain enumerated felonies, including bank fraud, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person, shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." For purposes of § 1028A, "[a] signature is a 'means of identification.'" *United States v. Conley*, __ F.4th __, No. 22-

5112, 2023 WL 8858474, at *7 (10th Cir. Dec. 22, 2023) (quoting *United States v. Porter*, 745 F.3d 1035, 1043 (10th Cir. 2014) (holding, as a matter of first impression, that forging another's signature qualifies as a "means of identification" under the aggravated identity theft statute)).

Section 1028A "does not define the meaning of 'during and in relation to.'" *United States v. Croft*, 87 F.4th 644, 647 (5th Cir. 2023). In *Dubin*, the Supreme Court "clarif[ied] this meaning, holding that not every instance in which a person uses another person's means of identification 'during' a fraud is 'in relation to' that fraud such that it constitutes aggravated identify theft." *Croft*, 87 F.4th at 647 (quoting *Dubin*, 599 U.S. at 131). Rather, under § 1028A(a)(1), "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." *Dubin*, 599 U.S. at 131. "[B]eing at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its success.'" *Id.* "[F]or fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." *Id.* at 131-32. Accordingly, while *Dubin* "redirects the statute's focus to offenses built around what the defendant does with the means of identification in particular," § 1028A "still proscribes uses of a means of identification involving fraud and deceit about identity." *United States v. Gladden*, 78 F.4th 1232, 1244 (11th Cir. 2023).

In *Dubin*, the petitioner "overbilled Medicaid by inflating the qualifications of an employee who performed a test and claiming a higher reimbursement based on those qualifications." *Croft*, 87 F.4th at 647 (citing *Dubin*, 599 U.S. at 114). While the test "had been done by a junior 'psychological associate,'" the petitioner billed Medicaid "as if the test had been done by a licensed psychologist." *Croft*, 87 F.4th at 647 (quoting *Dubin*, 599 U.S. at 114). In the bill that he submitted

3

to Medicaid, the petitioner included a patient's name and Medicaid reimbursement number. *Dubin*, 599 U.S. at 115. "Because he misrepresented the employee's qualifications and overbilled Medicaid," the petitioner was convicted of the predicate offense of healthcare fraud. *Croft*, 87 F.4th at 647-48. And because, in the process of submitting the fraudulent bill, he used a "means of identification" – the patient's name – he was also convicted of aggravated identity theft under § 1028A. *Dubin*, 599 U.S. at 114-15.

The Supreme Court reversed the petitioner's conviction for aggravated identity theft on the basis that "his use of the patient's name was not at the crux of what made the underlying overbilling fraudulent." *Id.* at 132. Rather, the Court explained, "[t]he crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee. The patient's name was an ancillary feature of the billing method employed." *Id*. As such, the "petitioner's fraud was in misrepresenting *how* and *when* services were provided to a patient, not *who* received the services." *Id.* (emphasis in original). For this reason, the Court held that the "petitioner did not use the patient's means of identification in relation to a predicate offense within the meaning of § 1028A(a)(1)." *Id.*

## II.    The Instant Case

Analyzing the facts of the instant case within the framework articulated by the Supreme Court in *Dubin*, the Court finds that Ms. Felch's forgery of her employer's signature on a check that she wrote to her credit card company was at the crux of Ms. Felch's underlying bank fraud. Specifically, Ms. Felch used a means of identification (her employer's signature) in a deceptive manner – to deceive the bank into believing that the authorized signatory on the account had authorized the writing of the check and the resulting transfer of funds to Ms. Felch's credit card company.  In other words, Ms. Felch "affirmatively represented" to the bank that her employer,

the authorized signatory on the account, "had authorized [the check] when, in fact, he had not." *Gladden*, 78 F.4th at 1245. Ms. Felch's fraudulent use of her employer's signature can "be succinctly summarized as going to 'who' [was] involved" in the authorization of the check. *Dubin*, 599 U.S. at 131-32; *see also United States v. Iannelli*, No. 22-10069-NMG, 2023 WL 7165109, at *2 (D. Mass. Oct. 31, 2023) (applying *Dubin*, finding that, by using her employer's signature stamp on an unauthorized check that she issued to herself, defendant "used her employer's identity without its consent to procure funds from the employer's bank," and thus "allegedly misrepresented 'who' authorized the withdrawal of funds," which misrepresentation was "at the crux of the alleged bank fraud because by whom the signature on a check is authorized determines who is liable for the face amount of the check"); *Conley*, 2003 WL 8858474, at *7-8 (rejecting defendant's argument that, in light of *Dubin*, the district court plainly erred in accepting her guilty plea to aggravated identity theft, where defendant had falsified who had authored lien releases by forging signatures of financial institution employees to create false lien releases); *United States v. Herman*, Nos. 22-8057, 22-8061, 2023 WL 6861766, at **2, 8 n.6 (10th Cir. Oct. 18. 2023) (finding that government had met its burden to show that a forged signature was "used in a manner that is fraudulent or deceptive" and "play[ed] a key role" in the crime, where defendant used a forged signature to create a "fake attorney-opinion letter").

Ms. Felch's use of her employer's means of identification "is distinct from the conduct at issue in *Dubin*, where the defendant misrepresented only the qualifications of the professional who performed psychological testing on a patient to increase the reimbursement from Medicaid." *Gladden*, 78 F.4th at 1245. In contrast, Ms. Felch's use of her employer's identity "was central to the deception: she used their 'means of identification itself to defraud or deceive." *Id.* at 1245-46. The bank would not have transferred the funds to Ms. Felch's credit card company "had they

known that [her employer] had not actually authorized the [check]." *Id.* at 1246. "By explicitly

using [her employer's] identity to falsely represent to [the bank] that the [check was] authorized,"

Ms. Felch "appropriated [her employer's] personal information to deceive others." *Id.* Thus,

because her employer's "signature on the [check] directly enabled" Ms. Felch to transfer funds

from her employer's bank account to her credit card company, "the means of identification

specifically was a key mover in the criminality." *Id.*

       Ms. Felch's arguments to the contrary are unavailing. First, Ms. Felch argues that, because

she did not "*steal* her employer's identity" and "never represented by use of her employer's name

or signature that she *was* her employer, but rather, "[a]t all times relevant to the bank fraud []

operated only under her own identity," no aggravated identity theft occurred. Doc. 32 at 10

(emphasis in original). "But *Dubin* did not hold that the defendant in that case was innocent of

aggravated identity theft because he did not present himself to be someone else. Rather, it held that

when a predicate felony involving 'fraud and deceit crimes' hinges on *how* and *when* services were

provided to a patient, not *who* received the services, it cannot sustain an aggravated identity theft

conviction." *Croft*, 87 F.4th at 648. Thus, after *Dubin*, § 1028A's "reach is [] limited to situations

where a 'genuine nexus exists between the use of a means of identification and the predicate

offense." *Gladden*, 78 F.4th at 1244.

       In *Dubin*, there was a lack of "genuine nexus," or "a mismatch between the 'crux' of the

predicate felony – overbilling Medicaid by misrepresenting Person A's qualifications – and the §

1028A conviction that the government argued the predicate felony supported – the incidental use

of Person B's name and Medicaid ID on the billing statement." *Croft*, 47 F.4th at 648. It was

precisely because "the billing statement was rendered fraudulent by the misrepresentation about

Person A, and not by the misrepresentation about Person B," that the Court concluded that "Person

B's means of identification was not used 'in relation to' – that is, central to – the predicate offense of fraud." *Id.*

Here, there is no such mismatch or lack of genuine nexus. *Id.* To the contrary, Ms. Felch's misrepresentation about 'who' authorized the check to her credit card company was "the basis – and 'heart of' –" the underlying bank fraud charge. *Id.* "Far from being [an] ancillary feature" of Ms. Felch's writing of the check as she argues, the forgery of her employer's signature was "the basis" of her charge for the predicate felony of bank fraud. *Id.* at 649. Accordingly, and "[a]s is required by *Dubin*," the use of her employer's signature was "at the crux of what made the underlying conduct fraudulent." *Id.; see also Croft*, 87 F.4th at 648-49 (holding that defendant's misrepresentations on applications to the Department of Veteran Affairs, namely, that four individuals qualified to teach classes to veterans were employed by him who, in fact, were not employed by him, was at the crux of the predicate felony of wire fraud, and thus, regardless of the fact that defendant did not falsely claim to be one of those individuals, he was properly convicted of aggravated identity theft); *Gladden*, 78 F.4th at 1245-46 (holding that defendant was properly convicted of aggravated identity theft where, although she did not hold herself out to be Dr. Almirol, she altered a prescription for a certain patient that Dr. Almirol had previously signed, for the purpose of obtaining additional prescriptions for that patient, and that her "use of Dr. Almirol's means of identification was fraudulent because she falsely reported that he had authorized the additional prescriptions").

Ms. Felch next attempts to remove this case from the purview of § 1028A by characterizing the "crux" of her offense as "the validity of the check she used to defraud the bank." Doc. 32 at 11. But the check was invalid for the very reason that, by forging her employer's signature, Ms. Felch deceived the bank as to *who* had authorized it. Thus, Ms. Felch's use of her employer's

identity to falsely represent to the bank that the check she wrote to her own credit card company was authorized by her employer remains firmly at the crux of the predicate bank fraud charge.

Ms. Felch also attempts to distinguish the "offense and the harm caused" here from those of "ordinary identity theft." Doc. 32 at 10. But the characteristics of what she describes as "ordinary identity theft" are equally attendant to her instant offense. Just as "an identity thief" "*appropriate[s]* [the victim's] identity through use of the victim's identifiers," so, too, did Ms. Felch appropriate her employer's identity through use of his name and signature. *Id.* (emphasis in original). And just as the victim of "ordinary identity theft" "frequently has no way to learn of the theft or misuse of their identity until lasting damage has been done," an individual whose signature has been forged on a check equally has no way to learn of the forgery until funds have been withdrawn from their account. *Id.* Ms. Felch has not provided any support to distinguish between the difficulty in restoring "credit rating" and "reputations" after harm caused by what she calls "ordinary identity theft" and the fraudulent use of her employer's signature in the instant case. *Id.*

Finally, Ms. Felch's argument that her "offense clearly is not within the ordinary meaning of identity theft recognized by the *Dubin* court" is contrary to the clear text of *Dubin* itself. Doc. 32 at 10. In discussing the import of the words "transfers, possesses, or uses" in § 1028A, the *Dubin* Court explains that this "trio of verbs" capture[s] various aspects of classic identity theft." 599 U.S. at 125. The Court then provides three examples of "classic identity theft" accomplished by the transfer, possession, and use of another's means of identification. *Id.* at 125-26. The third example is as follows: "[t]hen there is use involving fraud or deceit about identity: a defendant who has used another person's identification information to get access to that person's bank account." *Id.* at 126 (citation omitted). As this is precisely what Ms. Felch is charged with doing

here, her "conduct thus falls squarely within the classic variety of identity theft left untouched by *Dubin*." *Gladden*, 78 F.4th at 1246.

In *Dubin*, the Supreme Court repeatedly reiterated that its "targeted reading" of § 1028A to apply only where "the means of identification is at the crux of the underlying criminality, not an ancillary feature of billing" was intended for the specific purpose of preventing a "broad reading" of § 1028A that "would, in practice, place garden-variety overbilling at [its] core." 599 U.S. at 122, 129; *see also id.* at 124, 129 (decrying the government's broad reading of the statute as applying an "aggravated" label "to all manner of everyday overbilling offenses" that would make "everyday overbilling" "the most common trigger for § 1028A(a)(1)'s severe penalty" and "create[] an automatic 2-year sentence for generic overbilling that happens to use ubiquitous payment methods"). Thus, the Supreme Court made clear its intention to ensure that "the hour-inflating lawyer, the steak-switching waiter, [and] the building contractor who tacks an extra $10 onto the price of the paint he purchased" were not swept up into the net of the statute. *Id.* at 130.

But Ms. Felch did not engage in "garden-variety overbilling." She did not "provide a service to a client while merely misrepresenting how the service was performed to inflate the bill." *Gladden*, 78 F.4th at 1246. Rather, she used the means of identification of her employer to deceive the bank into transferring funds from her employer's account to her credit card. *Id.* The use of her employer's signature was fraudulent or deceptive because she falsely represented that he had authorized the check made out to her credit card company. *Id.* Thus, the means of identification was "at the crux of the underlying criminality." *Dubin*, 599 U.S. at 129. Accordingly, under the framework articulated in *Dubin*, Ms. Felch used her employer's means of identification in relation to a predicate offense within the meaning of § 1028A(a)(1).

**CONCLUSION**

For the foregoing reasons, the Court finds that Ms. Felch's conduct, as charged in the Indictment, falls squarely within the bounds of § 1028A as interpreted by the Supreme Court in *Dubin*. Accordingly, dismissal of Count Six of the Indictment is not warranted.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Count Six of the Indictment [Doc. 32] is **DENIED.**


ENTERED this 22nd day of January 2023.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE